IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RYAN BADII, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. 3:12-CV-04541 |
| RICK'S CABARET INTERNATIONAL § | |
| INC, XTC CABARET (DALLAS), INC., § | |
| XTC CABARET, INC., AND XTC § | |
| CABARET, § | |
| § | |
| *Defendants.* § | |

# APPENDIX TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Monte K. Hurst
State Bar No. 00796802
monte.hurst@hsblaw.com

Adam Reed
State Bar No. 24002811
adam.reed@hsblaw.com

HERMES SARGENT BATES, LLP
901 Main Street, Suite 5200
Dallas, Texas  75202
214.749.6000
(f) 214.749.6100

*Counsel for Rick's Cabaret International Inc., XTC Cabaret (Dallas), Inc., XTC Cabaret, Inc. and XTC Cabaret*

## TABLE OF CONTENTS

| EXHIBIT | DOCUMENT | PAGES |
|---|---|---|
| A | Original Complaint (November 13, 2012) | APP 1 – 17 |
| B | Defendants' Original Answer (December 10, 2012) | APP 18 – 42 |
| C | Oral and Videotaped Deposition of Ryan J. Badii, September 12, 2013 | APP 43 – 133 |
| D | Affidavit of Josh Stern (November 15, 2013) | APP 134 – 142 |
| E | Affidavit of Jennifer Andis (November 13, 2013) | APP 143 – 148 |
| F | Affidavit of Amy Crenshaw (November 15, 2013) | APP 149 – 152 |
| G | Affidavit of Ed Anakar (November 15, 2013) | APP 153 – 155 |
| H | Certified copy of administrative EEOC file in *Ryan J. Badii v. Rick's Cabaret International, Inc. d/b/a XTC Cabaret,* Charge No. 450-2012-03750 | APP 156 – 191 |

Respectfully submitted,

HERMES SARGENT BATES, LLP
901 Main Street, Suite 5200
Dallas, Texas 75202
214.749.6000


By: *Monte K. Hurst*
     Monte K. Hurst
     State Bar No. 00796802
     monte.hurst@hsblaw.com

     Adam Reed
     State Bar No. 24002811
     adam.reed@hsblaw.com

     *Counsel for Rick's Cabaret International Inc., XTC Cabaret (Dallas), Inc., XTC Cabaret, Inc. and XTC Cabaret*

## CERTIFICATE OF SERVICE

On November 15, 2013, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served Plaintiff's counsel as follows electronically or by another manner authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure:

Mr. Vishal Chander
THE CHANDER LAW FIRM
3102 Maple Avenue, Suite 450
Dallas, Texas  75201


*Monte K. Hurst*
Monte K. Hurst



APP 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Ryan Badii § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | | |
| § | Case No. _____ | |
| Rick's Cabaret International, Inc; XTC § | | |
| Cabaret (Dallas), Inc.; XTC Cabaret, Inc., and § | Judge _____ | |
| XTC Cabaret § | | |
| § | | |
| Defendants. § | | |
| § | | |
| § | | |
| § | | |

# COMPLAINT

1.   Plaintiff brings this civil claim pursuant to Title VII of the Civil Rights Act of 1964 which makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin. Plaintiff was subject to severe and pervasive discriminatory treatment on the basis of race, color, religion, and national origin.  As a consequence of the discriminatory treatment, Plaintiff was subject to reduced compensation, less favorable work assignment, demotion, and retaliation. Plaintiff also brings a common law claim for wrongful discharge as Plaintiff was terminated for the sole reason he refused to perform an illegal act.  Plaintiff seeks all available damages, interest, costs, and attorneys' fees for the wrongful acts of Defendants.

## I.  PARTIES

2. Plaintiff, Ryan Badii, is a citizen of the United States and a resident of Dallas County, Texas.

3. Defendant, Rick's Cabaret International, Inc., is a publicly traded company incorporated under the laws of the State of Texas. Defendant's business address is 10959 Cutten Road, Houston, Texas 77066. Defendant may be served with process through its registered agent, Robert Axelrod, at 5300 Memorial Drive, Ste 700, Houston, Texas 77007. Eric S. Langan sits as President and is a director of Defendant. Defendant's website indicates it owns and operates XTC Cabaret venues including XTC Cabaret in Dallas, Texas. Rick's has over 1,200 employees and 3,200 independent contractors.

4. Defendant, XTC Cabaret (Dallas), Inc., is a corporation formed under the laws of the States of Texas. Defendant's corporate offices are listed as 10959 Cutten Road, Houston, Texas 77066. Defendant may be served with process through its registered agent, Robert Axelrod, at 5300 Memorial Drive, Ste 700, Houston, Texas 77007. Eric S. Langan sits as President and sole director of Defendant. Defendant is registered in Dallas County, Texas as conducting business under the assumed name XTC Cabaret, 8550 N. Stemmons Freeway, Dallas, Texas 75247.

5. Defendant, XTC Cabaret, Inc. is a corporation formed under the laws of the States of Texas. Defendant's corporate offices are listed as 10959 Cutten Road, Houston, Texas 77066. Defendant may be served with process through its registered agent, Robert Axelrod, at 5300 Memorial Drive, Ste 700, Houston, Texas 77007. Eric S. Langan sits as President and sole director of Defendant.

6. Defendant, XTC Cabaret, is the assumed name for XTC Cabaret (Dallas), Inc. Defendant's place of business is 8550 N. Stemmons Freeway, Dallas, Texas 75247. Defendant may be served with process through its registered agent, Robert Axelrod, at 5300 Memorial Drive, Ste 700, Houston, Texas 77007.

## II.   JURISDICTION AND VENUE

7. The Court holds original jurisdiction in this case pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction).

8. The Court holds supplemental jurisdiction over all related claims under 28 U.S.C. § 1367.

9. Venue is proper in this district under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

10. Venue is proper in this district under 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practice was committed in this district.

## III.   FACTS

11. Mr. Badii is a United Stats citizen who identifies himself as of Iranian ancestry. He identifies himself as of the Bahai faith.

12. In 2009, Mr. Badii moved to the Dallas metropolitan area to be closer to family.

13. Mr. Badii held around eight years of managerial experience in the human resources and the restaurant industries. He previously pursued a degree in Human Resources Management from Portland State University in Portland, Oregon.

14. Desperate for employment, Mr. Badii responded to an advertisement on Craigslist for a manager position with XTC Cabaret in Dallas, Texas.

15. XTC Cabaret is a part of a chain of gentleman's clubs featuring topless entertainers and restaurant services.

16. XTC Cabaret is owned an operated by Rick's Cabaret International, Inc ("Rick's"). a publicly traded company.

17. Defendants XTC Cabaret, Inc. and XTC Cabaret (Dallas), Inc. are affiliated entities with shared ownership and control as XTC Cabaret.

18. Mr. Badii was offered the position of Waitress Manager.

19. Mr. Badii accepted the position and began working around March 2009.

20. From the onset of employment with XTC, Mr. Badii was subject discriminatory treatment on the basis of race, color, religion, and national origin. As a consequence of the discriminatory treatment, he was subject to reduced compensation, less favorable work assignment, demotion, and retaliation.

21. Mr. Badii was subject to discrimination from the first day of employment. After introducing himself to fellow co-workers, he was asked where he was from. Mr. Badii responded that he was Iranian. Mr. Badii's manager, Erin Fry, immediately stated, "Oh my god, you are a Muslim Terrorist." Shortly thereafter, other staff members began repeating the statement.

22. Around April 2010, Josh Stern was hired as a General Manager at XTC Cabaret. He had supervisory duties over Mr. Badii.

23. Josh Stern began harassing Mr. Badii almost immediately. Josh Stern made statements like, "Where is your bomb?" and "Does your girlfriend wear veils and cover her body?" Mr. Badii informed Josh Stern that he was extremely offended by his comments.

24. Josh Stern also referred to Mr. Badii on multiple occasions as Muslim, Terrorist, and Arab. Josh Stern would ask Mr. Badii about his "ties to al Qaeda and Osama bin Laden." Mr. Badii told Josh Stern that he did not find the remarks funny.

25. Josh Stern showed express racial preference in the management of the business, including payment of wages, assignment of shifts, hiring of staff, and treatment of customers.

26. Josh Stern promoted a staff member named Marty Ray Carl to manager level. Marty Ray Carl was a self professed Klu Klux Klan ("KKK") member. Marty Ray Carl made statements like the first cloth to touch his body was a KKK robe. On a regular basis, Marty Ray Carl would refer to Mr. Badii as Persian Fuck, Muslim, or Muslim Terrorist.

27. Josh Stern reduced Mr. Badii's working shifts and gave those shifts to Marty Ray Carl.

28. Josh Stern paid Marty Ray Carl more money for working the same shifts as Mr. Badii.

29. Fights and illegal activities were an ongoing problem at XTC Cabaret. Mr. Badii banned one group of customers for frequently fighting in the club. Both Josh Stern and Marty Ray Carl harassed Mr. Badii for his decision. Josh Stern and Marty Ray Carl knew the customers were of Palestinian ancestry. Josh Stern said, "How can you turn your back on your brothers?" and asked, "Aren't you Palestinian, too?" Josh Stern laughed at his own comments.

30. Around September 2010, Josh Stern announced a policy to create a more "White friendly" club. He wished to accomplish the goal by hiring White floor hosts and entertainers instead of minority floor hosts and entertainers. He told staff that they were to hire any White female who applied for work. He also told staff that no Black entertainers were to be hired.

31. Although a large percentage of customers were Hispanic and Spanish speaking, Josh Stern refused to hire any Spanish speaking floor hosts.

32. General Managers claimed that the discriminatory policies in the hiring of staff came directly from Rick's corporate office. In April 2009, Mr. Badii was reprimanded by

manager Erin Fry for hiring several African American waitresses. Erin Fry stated that it was a policy from Rick's corporate office not to hire Black people. In Fall 2011, Josh Stern announced that the next person who hired Black staff would be fired. He ordered that any reason be found to fire the Black waitresses. Josh Stern openly stated that he did not want Black customers because it ruins the White and Hispanic customer base.

33. Mr. Badii realized that he would have no promotion opportunities because of his background. After Josh Stern attacked Mr. Badii with another racist comment, Mr. Badii responded "actually I'm half Russian." Mr. Badii's declaration that he was of half-Russian ancestry resulted in almost immediate better treatment including promotion.

34. Mr. Badii was promoted to the position of Entertainment Manager in late 2010. Entertainment Manager duties included recruiting staff and increasing entertainer count.

35. In his time as Entertainment Manager, Mr. Badii increased the number of entertainers working at XTC Cabaret by double. He substantially increased revenue for the club as well as his own commissions.

36. In Summer 2011, Josh Stern hired Tim St. Onge, who was White. The two began using racial slurs constantly towards staff and in reference to customers. Mr. Badii was regularly referred to as Terrorist, Muslim, and Italian Mafia. The two regularly referred to customers as Niggers, Spicks, Wetbacks, and Beaners.

37. Josh Stern and Tim St. Onge also targeted other staff who they believed were of Middle Eastern or Muslim background. They referred to one floor host as Arab, Muslim Guy, Taliban, Terrorist, and Rag Head.

38. In September 2011, Mr. Badii learned that Josh Stern was paying Tim St. Onge more per shift and a greater percentage of the tips. Mr. Badii confronted Josh Stern regarding the

**Specific Incidents Occurring After October 2011**

39. Around October 2011, Josh Stern ordered Mr. Badii to work the Sunday night shift with two objectives: 1) reduce incidents and 2) increase the entertainer count within 4 weeks. Mr. Badii reduced the number of incidents to 1 and increased the entertainer count from 30 to 50 within 4 weeks.

40. In December 2011, Mr. Badii made offers of employment to several African American waitresses and entertainers who were well qualified for the positions.

41. Josh Stern reprimanded Mr. Badii for the hires. Josh Stern stated that there were too many Black people on staff already and that Mr. Badii should hire less qualified applicants as long as they are not Black.

42. Shortly thereafter, Mr. Badii was demoted from Entertainment Manager to Floor Host Manager. Tim St. Onge was given the position of Entertainment Manager. The entertainer count immediately fell.

43. When the drop in entertainer count was discussed, it was suggested that Mr. Badii be made Entertainment Manager again. Josh Stern laughed. He stated only a White guy can be manager and that performance wasn't relevant.

44. In December 2011, Josh Stern reiterated his policy that no African Americans could be hired. Any African Americans on staff were to be reevaluated for employment and terminated. Any person with one drop of African American blood was barred from hiring.

45. Around January 2012, Josh Stern complemented Mr. Badii's performance and suggested that he would be promoted to Assistant General Manager within less than a month. The statement was made prior to a meeting of managers of clubs operated by Rick's to be held in the Dallas metropolitan area.

46. Mr. Badii was required to attend the regional meeting of General Managers from Rick's clubs in Houston, San Antonio, Dallas, and Ft. Worth. The meeting was mandatory for him.

47. The meeting included a tour of clubs owned and operated by Rick's by Regional Manager Wayne Fenlon. The tour group included five General Managers, Tim St. Onge, and Mr. Badii.

48. The tour group stopped at a club owned by Rick's called Cabaret North. Mr. Badii introduced himself and stated he worked at XTC Cabaret. An entertainer accompanying one of the General Managers stated, "Oh my god, you are a Nigger. You come from Niggers. Go back to your Niggers." The entertainer began chanting, "Nigger! Nigger! Nigger!" The harassment went on for more than one minute. None of the managers interceded to stop the harassment.

49. Mr. Badii was deeply offended and felt that he had to leave. He told the entertainer, "If you worked for me, you wouldn't have a job using this language." As he walked away, one of the General Managers yelled out, "Nigger!" and the entire group laughed.

50. Mr. Badii worked the following day at XTC Cabaret. Robert Bonilla, a representative from Rick's corporate, brought an extremely large physically intimidating man towards Mr. Badii. The man was referred to as and believed to be John Henry or "Paw Paw." The man was believed to be an employee of Rick's at the Onyx club in Houston, Texas.

51. The man began to verbally threaten and push Mr. Badii. He stated that Muslim Arabs had been persecuting Black people for a thousand years. He stated that Mr. Badii's people have subjected Black people to torture and terror long before 9/11 and that Arab Muslims refer to Black people as Abdi or slave. The tirade lasted for several minutes.

52. Security workers for XTC Cabaret came over in fear of Mr. Badii's safety and to prevent John Henry from physically attacking Mr. Badii. John Henry was yelling racial slurs and cursing.

53. Mr. Badii explained that he was not Arab or Muslim and diffused what he believed to be a dangerous situation.

54. Mr. Badii believes that the incident with John Henry was staged in order to retaliate against, intimidate, and harass him following the incident at Cabaret North the night before.

55. Mr. Badii reported the incidents to Josh Stern. Josh Stern stated that Mr. Badii was overreacting.

56. Mr. Badii formally complained to Josh Stern in front of Tim St. Onge regarding the discrimination he was experiencing. He brought up the mandatory meeting he attended at Cabaret North, which he left after being called Nigger repeatedly. Josh Stern demanded that Mr. Badii call the General Manager of Caberet North and apologize for the incident.

57. Mr. Badii asked for permission to write the corporate human resources department. Mr. Badii was told there was not a human resources department. Mr. Badii asked to write Ed Anakar, Director of Operations for Rick's. Josh Stern stated that Mr. Badii could not contact anybody outside of the club regarding club issues. Josh Stern stated, "Your actions must not affect my control of this club and you are especially forbidden from

contacting Ed [Anakar]or Wayne [Fenlon]." Josh Stern also stated that Mr. Badii was half-White anyway and stated "so what was [the] problem."

58. Illegality was a regular issue in the XTC Cabaret. On a regular basis, there were incidents of shooting, stabbing, attempted rapes, drug sales, drug use, illegal alcohol sales, and underage admission.

59. Mr. Badii would regularly intervene to stop criminal acts and assist victims of assault, attempted rape, and other crime. Automatic weapons were used inside of XTC Cabaret by customers. On one occasion, Robert Bonilla threatened Mr. Badii with a laser scope guided gun. On another Robert Bonilla threatened to use a machete against Mr. Badii. Mr. Badii attempted to contact law enforcement regarding many of the incidents. However, XTC Cabaret policy prohibited contacting law enforcement or even ambulances. It was Mr. Badii's refusal to commit and attempt to report illegality that resulted in his subsequent termination in February 2012.

60. On or about January 29, 2012 Mr. Badii learned that a doorman was taking money to allow minors under the age of eighteen years into the club. The doorman admitted collecting almost $2,000 that night by charging minors $20, $50, or $100 for entry without showing identification.

61. Mr. Badii terminated the doorman. In an effort to put Rick's corporate office on notice of the illegal entrants, Mr. Badii rang the money given to XTC Cabaret by the doorman in the register as a VIP Sale. Mr. Badii then called Josh Stern to inform him of the illegality. Josh Stern stated that he was working very closely with the front door and that the doorman was doing exactly what Josh Stern wanted. Mr. Badii informed Josh Stern that he rang the money up in the register. Josh Stern began yelling. He screamed,

"What? You did what? You rang up the money? You should never have rang up that money! How are we going to explain it to corporate? That is minor cover charges you Stupid Nigger!"

62. Robert Bonilla, Rick's corporate representative at XTC Cabaret, then threatened Mr. Badii to stay away from employees working the door because Robert Bonilla claimed he carried a machete with him. Robert Bonilla grabbed Mr. Badii's finger bent it causing Mr. Badii severe pain in his hand and wrist.

63. On February 3, 2012, Mr. Badii reported to Josh Stern that Robert Bonilla had attacked him and threatened to use a machete against him. Mr. Badii also told Josh Stern that Robert Bonilla was stealing $3,000 to $6,000 per weekend in cover charges. Josh Stern stated that Mr. Badii was rocking the boat too much.

64. Later that day, Josh Stern terminated Mr. Badii. Josh Stern claimed that he and Robert Bonilla found a drug pipe in the manager's office and claimed that it belonged to Mr. Badii. Mr. Badii denied the claim. Josh Stern asked Mr. Badii to leave the premises.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

65. As Texas law prohibits employment discrimination on the same bases as Title VII, the filing deadline is extended to 300 calendar days. TEX. LAB. CODE § 21.051; 42 U.S.C. §2000e-5 (e)(1),

66. Plaintiff filed a timely charge of discrimination against Defendants with Equal Employment Opportunity Commission ("EEOC") on August 13, 2012.

67. EEOC issued notice of right to sue on August 13, 2012. Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC. The 90th day falls on Tuesday, November 13, 2012 because the period would end on a Sunday or legal

holiday (Veteran's Day). *See* FED. R. CIV. PRO. 6 (a)(1)(C). A copy of the notice of the right to sue is attached as Exhibit A.

## V. CLAIMS

### DISCRIMINATION UNDER TITLE VII

68. Plaintiff brings this action for unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e, et seq.

69. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely race, color, religion, and national origin.

70. Defendants are an employer within the meaning of Title VII.

71. Defendants intentionally discriminated against Plaintiff because of his race, color, religion, and national origin in violation of Title VII by:

    A. Discriminating on the conditions of employment, including pay, job assignment, promotion, and demotion when:

        i. Sometime after November 1, 2012, Josh Stern expressly stated that Mr. Badii would not be made manager because only a White person could be manager regardless of performance;

        ii. Sometime after November 1, 2012, Mr. Badii was demoted from the position of Entertainment Manager even though he brought greater revenue to the club than his replacement Tim St. Onge, who was White;

        iii. Mr. Badii was paid less per shift and received a lower percentage of tips than Tim St. Onge, who was White.

        iv. Mr. Badii's shifts were reduced and given to Marty Ray Carl, who was White.

   v. Mr. Badii was paid less than Marty Ray Carl for working the same shifts;

   vi. Mr. Badii was given less favorable shifts in favor of Marty Ray Carl;

 B. Retaliating against Mr. Badii for opposition to discrimination when:

   i. Sometime after November 1, 2012, Mr. Badii was reprimanded and demoted from Entertainment Manager for hiring African American employees;

   ii. Defendants engaged in retaliation against Mr. Badii through physical and verbal intimidation and prohibiting Mr. Badii from reporting the incidents to higher authorities;

   iii. Mr. Badii was subject to reduced shifts after confronting Josh Stern about differences in shift pay and tips;

 C. Subjecting Mr. Badii to severe or pervasive harassment and creating a hostile working environment including when:

   i. On or about January 29, 2012, Josh Stern referred to Mr. Badii as "Stupid Nigger" after Mr. Badii reported illegal activities;

   ii. Sometime after December 1, 2012, Mr. Badii was refused permission to contact human resources or Rick's corporate officials outside of XTC Cabaret regarding the ongoing discrimination to which he was subject;

   iii. Sometime after December 1, 2012, Mr. Badii was verbally threatened and assaulted by John Henry in which Mr. Badii was called racial slurs and intimidated;

   iv. Sometime after December 1, 2012, Mr. Badii was repeatedly called a racial slur during the mandatory meeting at Cabaret North;

    v. Mr. Badii was subject to ongoing offensive jokes, slurs, epithets, name calling, physical assaults, threats, intimidation, ridicule or mockery, insults or put-downs, and interference with work performance.

  D. And other actions as aforementioned in this complaint.

72. Defendants behaved with malice or reckless indifference to the protected rights of Mr. Badii through its acts or omissions.

## COMMON LAW WRONGFUL DISCHARGE

73. Plaintiff was wrongfully discharged under the common law. Texas allows employees to sue their employers if they are discharged for the sole reason that the employee refused to perform an illegal act. *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 658 (Tex. 2012).

74. Plaintiff was discharged for the sole reason that he refused to participate in and attempted to report the admission of minors into a sexually oriented business, an act which violates the following laws :

  A. Knowingly allowing a minor to enter the premises of a sexually oriented business, violating Dallas City Code § 41A-20.1 and Texas Local Government Code § 243.010, a Class A misdemeanor;

  B. Committing the criminal offense of theft;

  C. Acting as accessory, accomplice, or conspirator in the criminal offense of indecency with a child.

75. Defendants acted with malice and are therefore subject to punitive damages.

### VI. DAMAGES

76. As a direct and proximate result of defendant's conduct, plaintiff suffered injuries and damages, including:

A. Plaintiff received reduced compensation, including fewer wages, commissions, and tips as a result of Defendants' actions.

B. Plaintiff was denied promotion, resulting in lost pay and benefits, as a result of Defendants' actions.

C. Plaintiff was demoted resulting in lost pay and benefits, as a result of Defendants actions.

D. Plaintiff was given less favorable work assignments resulting in lost pay and benefits, as a result of Defendants actions.

E. Plaintiff suffered lost pay as a result of his wrongful termination, which was done with malice.

F. Plaintiff has suffered mental anguish and emotional distress as a result of the Defendants' actions.

G. Plaintiff has suffered physical injuries as the result of Defendant's actions.

H. Although plaintiff has diligently sought other employment, he has been unable to find a job. In addition, plaintiff has incurred expenses in seeking other employment.

77. The acts, conduct, and behavior of Defendants were performed with malice and reckless indifference to Plaintiff's federally protected rights, by reason of which Plaintiff is entitled to an award of punitive damages in such amount as will sufficiently punish defendants for their conduct and as will serve as an example to prevent a repetition of such conduct in the future.

## VII.   ATTORNEY FEES

78. Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k).

### VIII.  PRAYER

**WHEREFORE** Plaintiffs respectfully requests judgment against the Defendants, jointly and severally, for:
  i.    general compensatory damages,
  ii.   punitive damages,
  iii.  back pay and interest on back pay
  iv.   front pay
  v.    past pecuniary losses
  vi.   special damages for medical, hospital, and physician's expenses,
  vii.  interest according to law,
  viii. costs of suit,
  ix.   attorneys fees, and
  x.    such other and further relief as the court deems just and proper.

Respectfully submitted,

s/ Vishal Chander

_____
Vishal Chander
The Chander Law Firm
A Professional Corporation
3102 Maple Avenue
Suite 450
Dallas, Texas 75201
Telephone: (214) 677-4990
Fax: (214) 953-9353
Email: vchander@chanderlaw.com
State Bar Number 24036349