IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RYAN BADII, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 3:12-CV-04541 |
| RICK'S CABARET INTERNATIONAL INC, XTC CABARET (DALLAS), INC., XTC CABARET, INC., AND XTC CABARET, | § § § § | |
| | § | |
| Defendants. | § | |

# APPENDIX TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        Monte K. Hurst
        State Bar No. 00796802
        monte.hurst@hsblaw.com

        Adam Reed
        State Bar No. 24002811
        adam.reed@hsblaw.com

        HERMES SARGENT BATES, LLP
        901 Main Street, Suite 5200
        Dallas, Texas  75202
        214.749.6000
        (f) 214.749.6100

*Counsel for Rick's Cabaret International Inc., XTC Cabaret (Dallas), Inc., XTC Cabaret, Inc. and XTC Cabaret*

## TABLE OF CONTENTS

| EXHIBIT | DOCUMENT | PAGES |
|---|---|---|
| A | Original Complaint (November 13, 2012) | APP 1 – 17 |
| B | Defendants' Original Answer (December 10, 2012) | APP 18 – 42 |
| C | Oral and Videotaped Deposition of Ryan J. Badii, September 12, 2013 | APP 43 – 133 |
| D | Affidavit of Josh Stern (November 15, 2013) | APP 134 – 142 |
| E | Affidavit of Jennifer Andis (November 13, 2013) | APP 143 – 148 |
| F | Affidavit of Amy Crenshaw (November 15, 2013) | APP 149 – 152 |
| G | Affidavit of Ed Anakar (November 15, 2013) | APP 153 – 155 |
| H | Certified copy of administrative EEOC file in *Ryan J. Badii v. Rick's Cabaret International, Inc. d/b/a XTC Cabaret,* Charge No. 450-2012-03750 | APP 156 – 191 |

Respectfully submitted,

HERMES SARGENT BATES, LLP
901 Main Street, Suite 5200
Dallas, Texas 75202
214.749.6000

By:  *Monte K. Hurst*
Monte K. Hurst
State Bar No. 00796802
monte.hurst@hsblaw.com

Adam Reed
State Bar No. 24002811
adam.reed@hsblaw.com

*Counsel for Rick's Cabaret International Inc., XTC Cabaret (Dallas), Inc., XTC Cabaret, Inc. and XTC Cabaret*

## CERTIFICATE OF SERVICE

On November 15, 2013, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served Plaintiff's counsel as follows electronically or by another manner authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure:

Mr. Vishal Chander
THE CHANDER LAW FIRM
3102 Maple Avenue, Suite 450
Dallas, Texas  75201

*Monte K. Hurst*
Monte K. Hurst



**EXHIBIT D**

**APP 134**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RYAN BADII, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 3:12-CV-04541 |
| RICK'S CABARET INTERNATIONAL | § | |
| INC, XTC CABARET (DALLAS), INC., | § | |
| XTC CABARET, INC., AND XTC | § | |
| CABARET, | § | |
| | § | |
| *Defendants.* | § | |

## AFFIDAVIT OF JOSH STERN

BEFORE ME, the undersigned authority, on this day personally appeared Josh Stern, who by me being duly sworn, deposed as follows:

1. My name is Josh Stern. I am over 18 years of age and of sound mind. I am personally acquainted with the facts stated herein and affirm the following is true and correct.

2. I have been the General Manger for XTC Cabaret (Dallas) since May 2010. XTC Cabaret (Dallas), Inc. is an adult nightclub that offers live nude entertainment. As General Manager of XTC Cabaret (Dallas), Inc. (the "Club"), I oversee and manage the operations and employees of the Club. In my experience, the employees of the Club are racially diverse and the working environment includes individuals from a variety of racial, ethnic, and religious backgrounds.

3. I began working directly with Ryan Badii when I became General Manager of the Club in 2010. I was Mr. Badii's supervisor and he reported directly to me. During his employment with the Club, Mr. Badii held the positions of Waitress Manager, Entertainment Manager, and Floor Host Manager. Although I transferred Mr. Badii from the Waitress Manager position to the Entertainment Manager position partially to give Mr. Badii experience in another type of job with the Club, I also did receive complaints from the waitresses that they did not like working with Mr. Badii. I transferred Mr. Badii from Entertainment Manager to Floor Host Manager for two primary reasons. First, I observed Mr. Badii being confrontational and harsh with the dancers, yelling at them and calling

-1-

them names like "bitch." Second, I hired a new employee, Tim St. Onge, who had more management experience and was better suited than Mr. Badii for the Entertainment Manager position.

Mr. Badii made $125 per shift in each of these managerial positions and each transfer was a lateral move to another "manager-level" position. During the majority of my time supervising him, Mr. Badii was Entertainment Manager. In this role, Mr. Badii's duties included hiring and terminating entertainers, managing house fees of entertainers, and providing customer service to customers.

4. As a part of their compensation, the managers of the Club received "tipouts." Throughout an evening when the Club is open, managers will often receive tips from customers for various customer service activities like arranging a table for VIP customers or bringing entertainers requested by customers. At the end of the night, these tips are all collected, split evenly between the number of managers working that night, and then distributed to the managers as a "tipout" for the evening. Although there is not a formal, written policy regarding the distribution of the tipouts, it is understood that they are given in equal amounts to the managers and I never gave unequal tipouts to managers. I also never gave Tim St. Onge or Marty Ray Carl, who were also Club managers, more in tipouts than Mr. Badii.

5. With regard to other compensation, there are no records of Mr. Badii ever working a double shift and not being paid time and a half for working that double shift.

6. Very quickly after I began working with him, I began receiving complaints from entertainers, waitresses, and other employees of the Club about Mr. Badii. I personally witnessed Mr. Badii yell and curse at the female entertainers and even become involved in loud, sometimes physical, arguments with customers.

7. Mr. Badii also made negative comments to me directly and called me "Meyer Lansky," who I understood was a known Jewish mob figure. I am of Jewish and Italian heritage.

8. Although I never personally witnessed Mr. Badii using drugs at the Club, I received reports from staff members who said they saw him using marijuana at work. I also received a report that a marijuana pipe belonging to Mr. Badii was found in the office of the Club, and that Mr. Badii was caught smoking marijuana in the elevator shaft, where there are no cameras.

9. Further, it is company policy that managers are not permitted to carry weapons of any kind in the Club. But, Mr. Badii would sometimes carry

mace and wear lead/metal lined gloves. I reminded Mr. Badii on several occasions that he was not allowed to bring these items to work.

10. Despite these problems with Mr. Badii's job performance, I tried to help Mr. Badii improve and hoped that he would learn how to behave appropriately and manage staff and customers. It became clear to me that Mr. Badii performed better when I was working directly with him during the same shifts. So, soon into Mr. Badii's employment, I changed the shifts around in order to keep a watchful eye on Mr. Badii. Ultimately, Mr. Badii was not permitted to work night shifts without another manager, preferably myself, in the building because Mr. Badii had to constantly be monitored.

11. In or about June 2011, I hired Tim St. Onge as the Waitress Manager. Shortly thereafter, I transferred Mr. St. Onge to the position of Entertainment Manager. The Entertainment Manager position, at that time, had been held by Mr. Badii. When I moved Mr. St. Onge into that position, I then transferred Mr. Badii into the position of Floor Host Manager. As Mr. St. Onge came from an entertainer-friendly format and had more experience than Mr. Badii in managing entertainers, I felt this was an appropriate position transfer. At that time, Mr. St. Onge was making $100 per shift, while Mr. Badii continued to be paid $125 per shift as Floor Host Manager. Mr. Badii's transfer to Floor Host Manager was not considered a demotion, and did not result in any decrease in shift pay.

12. On Monday, December 12, 2011, many of the managers of the Club got together in Dallas, Texas for a managers' meeting. After the meeting ended, a number of managers decided to get together socially at Cabaret North, another gentlemen's club. This outing was only social and not a part of the managers' meeting. I was one of the managers who attended this social outing. During this outing, an entertainer at Cabaret North and Mr. Badii appeared to be arguing. Mr. Badii made condescending statements to the entertainer, and the Cabaret North entertainer made inappropriate racial comments about the clientele at the club. At one point, one of the Cabaret North managers tried to remove the entertainer from her argument with Mr. Badii. As she was walking away from the argument, though, the entertainer repeated a racial slur. Neither myself nor the other managers who had gotten together at Cabaret North socially were involved in this incident with the entertainer, and none of us yelled, cursed, or made derogatory comments to Mr. Badii. I did not hear any managers or the General Manager of Cabaret North call Badii a "N*****."

APP 137

   I understand that Mr. Badii has asserted that a man named John Henry, or "Paw Paw," approached him after the outing at Cabaret North and verbally threatened and pushed him. While there was an incident of Mr. Henry arguing with Mr. Badii, it occurred on the day before the outing at Cabaret North, and it was quickly broken up by security.

13. By early 2012, Mr. Badii took on the important responsibility of closing the Club in the morning. As the manager in charge of closing the Club, Mr. Badii was responsible for staying at the Club past the 5:00 a.m. closing time to make certain that the revenue from that night was accounted for, placed in the safe, and locked. Mr. Badii had a key to the Club in order to perform this important task.

14. On February 6, 2012 at 6:41 a.m., I received an e-mail from Jennifer Andis, who was an employee of the Club. Ms. Andis worked the front door checking patrons' identification and also worked in the "Cage" on a regular basis. The "Cage" is simply a nickname for the backroom at the Club (and other adult nightclubs) in which the large safe is located. The safe holds the Club's money. In her email, Ms. Andis first asked me not to tell Mr. Badii about her email because he would "give her hell."

   Ms. Andis wrote that she was at the Club to help Christy Goodgion finish her work in the Cage. Ms. Goodgion is the House Mom and also regularly helps in the Cage. Ms. Andis wrote to me that Mr. Badii had left the Club without telling anyone. Ms. Andis said that she and Ms. Goodgion had been calling Mr. Badii, with no answer, and that there was no one at the Club at that point to lock up. Attached hereto as Exhibit D-1 is a true and correct printout of the e-mail message that I received from Jennifer Andis on February 6, 2012.

15. Following this incident, on Friday, February 10, 2012, I was notified by Ed Anakar, Director of Operations of RCI Management Services, Inc., that Mr. Badii could not be a manager anymore because of this incident. I was instructed by Mr. Anakar to take Mr. Badii's Club keys away and make him a Floor Host, rather than Floor Host Manager. Mr. Anakar also told me that Mr. Badii needed to always work the same shifts as me so that he could be supervised. Lastly, Mr. Anakar instructed me to change the entry code for the upstairs office at the Club so that Mr. Badii no longer had access.

16. On February 11, 2012, I notified Mr. Badii that because he had left the Club without locking up on February 6, 2012, he was being moved to the Floor Host position. I told Mr. Badii that he needed to return his keys, but that he would remain employed with the Club. Mr. Badii reacted to this news by quickly becoming very angry. Mr. Badii told me that he was quitting. Mr. Badii then attempted to physically fight me and yelled that he would "sabotage us and the Club" and would "take our girls."

-4-

-5-

17. I have never discriminated against Mr. Badii in any way. I have never given preference to other non-Muslim or non-minority employees over Mr. Badii because of his race, color, national origin, or religion. Further, I never made any employment decisions based on race, color, national origin, or religion, nor did I ever assign Tim St. Onge or Marty Ray Carl to their respective shifts or positions based on their race, national origin, color, or religion.

18. I have never stated, nor implemented a policy, that only a White person could be Entertainment Manager, or any other kind of manager. I also did not implement a "white-friendly" policy prohibiting the hiring of minorities, and no such policy was in place. I never reprimanded Mr. Badii for hiring African American or other minority employees.

19. While there may have been some isolated incidents of racial remarks made in casual conversations with Mr. Badii, these remarks were always made in jest and never affected Mr. Badii's performance. In fact, Mr. Badii engaged in the use of racial remarks himself. Also, Mr. Badii was also always able to report any concerns, if he had them, to me or to company management, and I never instructed Mr. Badii that he could not report any complaints to higher authorities.

FURTHER AFFIANT SAYETH NOT.

_____
JOSH STERN

SUBSCRIBED AND SWORN TO BEFORE ME on this 15 day of November, 2013.

_____
Notary Public in and for the State of Texas

JERRY COLLAZO
My Commission Expires
July 10, 2017



APP 141

**From:** Jennifer Andis
**Sent:** Monday, February 06, 2012 6:41 AM
**To:** Josh Stern
**Subject:**

Please don't show Ryan this because he will make my life hell...

I stopped by to help Christy so she could get out of here early, just so you know...

Anyway, Ryan left without telling anyone anything. Luckily, Chuy and Eddie stuck around or else Christy would've been by herself had I not been here too.

Dean said his guys won't be here until 7 AM but he'll stick around since there's no one that can lock up the club.

Chuy, Christy and I have repeatedly called Ryan with no response and Christy was finished with her work around 6:15 AM